### ROBERT G. SHAW & others *vs.* BENJAMIN D. FINNEY.

H., a broker, whose business was to buy and sell fish, as well for himself as for others, was authorized by S. & Co. to buy fish for them, and bargained with F. for a quantity of fish, intending to buy for S. & Co., but not intimating to F. that he was not buying for himself, and made this written memorandum of the bargain: "October 21st 1846. F. agrees to sell H. his fare of fish, at $2·50 per quintal. as they lay, or to go on flakes one good day, at $2·62½; and to have the refusal of them until Friday evening, 23d instant:" H. gave notice to F., before Friday evening, that he would take the fish at $2·62½, they to be put on flakes one good day: F. refused to deliver the fish to H., and S. & Co. brought an action against F. for breach of the bargain. *Held*, that the case was within the statute of frauds, and that the action could not be maintained.

THIS was an action of assumpsit to recover damages for breach of an alleged contract to deliver certain quintals of fish to the plaintiffs.

At the trial in the court of common pleas, before *Ward*, J. the plaintiffs, to prove the contract, called B. Hathaway as a witness, who testified that he resided in Plymouth, and was in the business of buying and selling fish for himself and others ; that in the year 1846 he had bought eleven thousand quintals, three or four thousand for himself, and the rest for the plaintiffs ; that for the two preceding years he had bought

large quantities of fish, one half for himself, and one half for others; that in the autumn of 1846, he was authorized, in writing, by the plaintiffs, to buy fish for them, and that, on the 21st of October 1846, he went to Eel River, (in Plymouth,) where the defendant resided, and there treated with him for his fish, which lay in a storehouse, and the precise quantity of which was not ascertained; that he then and there intended to buy for the plaintiffs, and made an arrangement with the defendant, which he, immediately after, on the same day, but not in the defendant's presence, minuted on his memorandum book, as follows: " Benja. Finney agrees to sell B. Hathaway his fare of Truro fish, at $2·50 per quintal, as they lay, or to go on the flakes one good day, at $2·62$\frac{1}{2}$, and to have the refusal of them until Friday evening, 23d instant: " That thus having the refusal until the 23d evening, and being called to Boston on the 23d day, he sent T. S. Perkins to the defendant, to notify to him that he would buy the fish at $2·62$\frac{1}{2}$; that in the evening, on his return from Boston and the return of Perkins from Eel River, and his report, he (Hathaway) made this memorandum on his book: " Friday, Oct. 23 '46. I have employed T. S. Perkins, this day, to go to Eel River, to tell Benja. Finney that I will take his fish, as per agreement of Wednesday the 21st; and Mr. Finney states that all is satisfaction. B. Hathaway for R. G. Shaw & Co: " That, on the next day, he went to the defendant's house, but did not find him, and left there a letter for him; that in a week or fortnight afterwards, when the price of fish was rising, he called on the defendant, at his house, and the defendant then refused to deliver the fish, saying that he (Hathaway) did not come himself, on the 23d, as he ought to have done; that he (the defendant) did not know Perkins; that he wanted to know whom he sold to, and who was responsible.

The said Hathaway further testified, that he was a broker, but did not remember that he told or intimated to the defendant that he was acting for any one else, and not for himself, until he saw him about a fortnight after the sale. He

also testified that he believed there were about eight hundred quintals of fish in the lot which he contracted for.

T. S. Perkins testified that he went to Eel River, for Hathaway, on the 23d of October 1846, and saw the defendant, with whom he had no personal acquaintance, and told him that Hathaway would take the fish at $2·62½, they to be put on flakes one good day ; that, if he would let Hathaway know when they were ready, he would send and take the weight ; that the defendant said he would consider the bargain closed at this price ; that when he left the defendant, he was requested by him to tell Hathaway to come up the next day, as there were so many tricks of the trade ; and that he then asked the defendant if he considered it a sale. and he said he did.

Upon this evidence, the judge ruled, that the statute of frauds furnished a defence to the action, and a verdict was taken for the defendant. The plaintiffs alleged exceptions to the ruling.

*Coffin & W. Davis,* for the plaintiffs. As Hathaway was a broker, he was authorized to sign the contract for both parties; and thus the statute of frauds (Rev. Sts. *c.* 74, § 4) does not apply to the case. Chit. Con. (4th Amer. ed.) 317. *Clason* v. *Bailey,* 14 Johns. 484. *Penniman* v. *Hartshorn,* 13 Mass. 87. *Rucker* v. *Cammiyer,* 1 Esp. R. 105. The defendant, living in the same town with Hathaway, who had done extensive business, as a broker, in buying fish, must have known that he was a broker, and was buying for others.

The defendant might have maintained an action against the plaintiffs, on the strength of Hathaway's memorandum. See *Thomson* v. *Davenport,* 9 Barn. & Cres. 78. *Allen* v. *Bennet,* 3 Taunt. 169. Sugd. Vend. (1st Amer. ed.) 70.

The defendant ratified the contract by his declarations to Perkins. *Soames* v. *Spencer,* 1 Dowl. & Ryl. 32.

*Beal & W. Thomas,* for the defendant. A broker, in this Commonwealth, has no greater authority than any other agent, and is not, as such, authorized (as an auctioneer may perhaps be) to sign the name of both parties to a contract of

sale.　In England, brokers cannot legally buy or sell for them-selves; and their duties are prescribed by statute.　Paley on Agency, (2 Amer. ed.) 15.

WILDE, J.　The question is, whether the alleged contract of sale is proved by the evidence reported.　The evidence is, that B. Hathaway, a witness for the plaintiffs, made an agree-ment with the defendant, on the 21st of October 1846, for the purchase of his fish, and entered a memorandum thereof in his book, as follows : " Benja. Finney agrees to sell B. Hathaway his fare of Truro fish at $2·50 per quintal, as they lay, or to go on the flakes one good day, at $2·62½, and to have the refusal of them until Friday evening, 23d instant." Hathaway testified that he was a broker, and was in the busi-ness of buying and selling fish for himself and others, and that he was authorized to purchase fish for the plaintiffs, and that these fish were intended by him to be purchased for them.　But he admits that he did not intimate to the defend-ant that he was acting for any other person, and not for him-self, until after the agreement.

On this evidence, it is contended for the plaintiffs, that this was a contract between them and the defendant, and that, although Hathaway was employed by the plaintiffs only as their agent, yet when the defendant dealt with him, he be-came his agent also, and that his memorandum of the agree-ment took the case out of the statute of frauds, which pro-vides that " no contract for the sale of any goods," &c. " for the price of fifty dollars or more, shall be good or valid, un-less " (among other things) " some note or memorandum in writing be made and signed by the party to be charged thereby or by some person thereunto by him lawfully authorized." Rev. Sts. c. 74, § 4.　Cases were cited from the English authorities, as to similar contracts made by brokers ; but these authorities are not applicable to the present case. - A broker, in England, is a known legal public officer, governed by stat-ute ; and those who deal with him are to find out who his principals are.　He cannot act as principal, without violating his oath ; and he is also liable to a penalty, if he does.　1 Tomlins's Law Dictionary, 274.

Hathaway was engaged in buying and selling fish, as well for himself as for others; and it does not distinctly appear whether this purchase was made wholly for the plaintiffs, or not. But however this may have been, the defendant did not deal with Hathaway as a broker or agent, but as the contracting party ; and if the defendant had himself signed the first memorandum, he would not have been liable in this action by the plaintiffs ; for the contract was, in terms, a contract with Hathaway. *Exceptions overruled.*